No. 31,187.

Mae Forsberg, *Appellant,* v. Isaac O. Snow, doing business as The Snow Meat Company, *Appellee.*

(22 P. 2d 421.)

Opinion filed June 10, 1933.

*Frank H. Thompson, J. H. Brady* and *N. E. Snyder*, all of Kansas City, for the appellant.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for injury to person and property sustained by the driver of an automobile when the automobile collided, at the intersection of two city streets, with a motor truck driven by an employee of defendant. The jury returned a general verdict for defendant. The jury also returned special findings of fact, which are appended to this opinion. Judgment was entered for defendant, and plaintiff appeals.

The accident occurred at the intersection of Armstrong avenue and Thirteenth street in the city of Kansas City. From the intersection Armstrong avenue extends east and west and is thirty feet wide from curb to curb. From the intersection Thirteenth street extends north and south and is forty feet wide from curb to curb. In the center of Thirteenth street is a double-track street railway. Each track is five feet two inches wide, and the space between the inside rails of the two tracks is five feet three inches wide. South of Armstrong avenue is Ann avenue, an east-and-west thoroughfare, twenty-six feet wide, crossing Thirteenth street. The distance from the center of Ann avenue to the center of Armstrong is 344 feet.

The truck entered Thirteenth street from Ann avenue and proceeded northward to the point of collision. From Ann avenue to Armstrong avenue and beyond, it is 6½ per cent down grade. The automobile approached Thirteenth street from the west on Armstrong avenue, and proceeded east to the point of collision. Approaching Thirteenth street from the west on Armstrong avenue, it is 2.7 per cent up grade. The collision occurred about twenty-two feet seven inches east and about ten or twelve feet north of the southwest corner of the intersection of Thirteenth street and Armstrong avenue.

Plaintiff's petition alleged the truck was driven down grade at the rate of fifty miles per hour, on the west side of Thirteenth street; that the truck entered the intersection after plaintiff had entered the intersection and while plaintiff was in full view of the truck driver; that the truck driver attempted to turn the truck farther toward the west; that the truck was not under control of the driver; and gen-

erally, that the truck was driven without care or caution. Defendant's answer contained three defenses, separately stated and numbered: First, a general denial; second, a general plea of contributory negligence on the part of plaintiff; and third, violation by plaintiff of pleaded city ordinances. One ordinance required plaintiff to stop before she entered Thirteenth street, and another ordinance gave the truck right of way if the truck and automobile reached the intersection at the same time.

The truck driver testified he turned into Thirteenth street from Ann avenue and headed north at a rate of speed of about fifteen miles per hour. From the time he headed north until the collision, his truck was astride the west rail of the east street-car track. As he proceeded northward, he attained a speed of approximately twenty-five miles per hour. When he got toward the intersection, he approached it at a rate of about twenty miles per hour. He entered the intersection at the rate of about fifteen miles per hour. The jury found he entered the intersection at the rate of fifteen to twenty miles per hour. As the truck driver approached the intersection, he looked to the west, the direction from which plaintiff came, and did not see the automobile. He then looked toward the east. He then looked again to the west, and saw plaintiff's automobile rapidly approaching. There is no finding of rate of speed of the automobile as it approached Thirteenth street. Whatever the previous rate of speed, plaintiff entered the intersection at the rate of four or five miles per hour, and the truck driver testified plaintiff "was just entering the intersection about the same time I was." Plaintiff did not stop as the city ordinance required her to do, but drove on. The truck driver testified he jammed down his clutch and brake, turned to the right to avoid a collision, and skidded to about the center of the street. Plaintiff turned slightly to the left, and the right side of her car and left side of the truck came together. There was testimony that the shortest distance within which the truck could be stopped, when going down a 6 per cent grade on concrete pavement at the rate of fifteen miles per hour, was twenty feet.

None of the foregoing testimony is opposed to the physical facts of the accident, and all of it must be taken as true so far as reconcilable with the special findings.

Plaintiff's account of the accident was quite different from that of the truck driver, and the jury did not believe the greater portion

of her testimony. She said she came to a dead stop before entering the intersection. The jury found to the contrary. She said that, seeing the truck at the alley between Ann and Armstrong avenues, she speeded up to avoid a collision. The jury found to the contrary. The jury did find that at the instant of the collision the automobile was going five or six miles per hour, a slight increase at the instant over the rate at which plaintiff entered the intersection. She said the truck came down Thirteenth street east of the street-car tracks, or perhaps astride the east rail of the east track. The jury found to the contrary. Plaintiff illustrated the movement of the truck just before the accident by means of a miniature motor car. She swerved the truck over into the space between the two street-car tracks to a point touching and covering the east rail of the west track. The truck was then going northwesterly with the left front wheel over the east rail of the west track and the left rear wheel about the center of the space between the two tracks. The jury found to the contrary.

The truck driver did not testify that both vehicles entered the intersection at the same time. He said "about" the same time. The jury found the front wheels of plaintiff's automobile were nineteen or twenty feet in the intersection when the front wheels of the truck entered the intersection. So plaintiff in fact entered the intersection first, and the front wheels of her automobile were approximately half way across Thirteenth street when the truck entered the intersection. The jury found the truck was going at the rate of about fifteen or twenty miles per hour when it entered the intersection, or from twenty-two to twenty-nine feet per second. The truck, astride the west rail of the east street-car track, was only ten or twelve feet south of the automobile's course of travel when the front wheels of the automobile were still in the west part of the space between the two street-car tracks. Assuming the truck driver was negligent, the foregoing facts demonstrate that if when plaintiff reached the intersection she had taken the time necessary to stop and then put her car in motion, the truck would have passed safely in front of her. In any event, it would have been manifestly foolhardy for plaintiff to drive on. Therefore, plaintiff was guilty of negligence contributing to the collision, as a matter of law.

Plaintiff undertakes to relieve herself from consequences of negligence contributing to the accident by an argument which may be summarized as follows: When plaintiff entered the intersection the

truck was 329 feet south of the center of the intersection and 326 feet south of the point of collision. So the truck traveled about eleven times faster than plaintiff traveled. While plaintiff proceeded two feet to the intersection and twenty feet into the intersection, the truck traveled 242 feet. After traveling that distance the truck was still eighty-four feet from the point of collision. The truck driver could stop, when going fifteen miles per hour, within twenty feet. Therefore he could stop, when going sixty miles per hour, within eighty feet. This being true, he could have stopped, with four feet to spare, before the truck struck the automobile. The conclusion is, plaintiff's failure to stop before entering the intersection did not contribute to the accident.

Plaintiff's action is based on the fact there was a collision between her automobile and the truck. Plaintiff entered the intersection without stopping as the law required. A stop of one second of time before entering the intersection would have prevented the two vehicles from coming together. However negligent the truck driver may have been, plaintiff's negligence was a direct, immediate and substantial cause of the collision.

Plaintiff's contention involves absurdity. If the truck was eighty-four feet away when the automobile was twenty feet into the intersection and two feet seven inches from the point of collision, it would have been necessary for the truck to move at the rate of sixty miles an hour in order to participate in the collision. The truck driver said his truck would not do better than fifty. However modest he might be, the jury found the truck entered the intersection at the rate of fifteen or twenty miles per hour. Some time and distance were necessary to enable the truck to reduce speed to fifteen or twenty miles per hour, and on plaintiff's theory the truck must have developed amazing speed in order to be on time for the collision. The mathematical formula for computing stopping distance is equally visionary. When speed of an automobile equipped with four-wheel brakes is doubled, stopping distance is quadrupled.

Plaintiff's contention is based on the first three findings of fact returned by the jury. The contention is not based, however, on facts found by the jury or established by the evidence.

Plaintiff testified that when she approached the intersection she came to a dead stop two feet from the intersection. She looked south and saw the truck at the top of the hill south of Ann avenue. The truck driver described his course to Thirteenth street. He

testified he turned into Thirteenth street from Ann avenue and so never was south of Ann avenue on Thirteenth street. As indicated above, the truck driver testified he turned into Thirteenth street and headed north, traveling about fifteen miles per hour, and as he proceeded gained a speed of about twenty-five miles per hour. As he neared the intersection of Armstrong avenue, he saw plaintiff approaching rapidly—at the rate of about twenty-five miles per hour. A pedestrian who saw both vehicles approach the intersection and saw the collision testified as follows:

"Q. Why did you stop? A. Well, this truck was coming down Thirteenth street, and this big car coming along on Armstrong. . . .

"Q. Now, then, just tell the court and jury how the big car was coming. A. It was coming, and it seemed that it was about—it wasn't quite a half block from my sister's house when I saw it coming. It was coming pretty briefly.

"Q. It was coming what? A. It was coming pretty fast. Pretty briefly, this big car was.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Why did you stand there? A. Well, this big car was coming so fast, and in the meantime this truck was almost ready to cross the street too. And I wouldn't attempt to cross, and so I stood there and waited."

The testimony of these two witnesses was incompatible with plaintiff's testimony, so much of which, with respect to other matters, the jury disbelieved.

The jury were not asked to find where the truck was when plaintiff first saw it, and the jury made no finding on the subject. The result is the phrases appearing in the first three findings, "at or south of the intersection of Thirteenth and Ann" and "at or beyond the intersection of Thirteenth and Ann," did not embody either a fact found or a fact proved. As indicated above, if when plaintiff was at the intersection of Armstrong avenue and Thirteenth street, the truck was at or south of Ann avenue, the truck could not have gotten to the point of collision by the time plaintiff got there.

The substance of the first special question was where plaintiff was when she first saw the truck. The substance of the second question was whether there was obstruction to plaintiff's view. The substance of the third question was the rate of speed of the truck when plaintiff first saw it. The first question amounted to no more than if it read as follows:

How many feet west of the curb line of Thirteenth street was the front end of plaintiff's sedan when she saw defendant's truck approaching north, as she testified, at or south of the intersection of Thirteenth and Ann?

Therefore, the phrase "at or south of the intersection of Thirteenth and Ann" may be disregarded, and this court disregards it, as the jury plainly did. The same is true of the second and third questions.

The truck driver testified he approached the intersection with the wheels of the truck astride the west rail of the east street-car track, and the jury found the front wheels of the truck were astride the west rail of the east track when the truck entered the intersection. The truck driver testified that when collision was imminent, he turned the truck to the right—toward the east. Plaintiff testified he turned toward the west. The thirteenth finding was that at the instant of the collision the front wheels of the truck were still astride the west rail of the east track, but were closer to the west rail. Both front wheels could not be closer to the rail, whether the truck were turned toward the east or toward the west. One front wheel would be nearer the rail and one farther away, and the finding means the truck wheels west of the rail were nearer the rail at the instant of the collision than they were before.

As interpreted above, the findings are perfectly consistent with themselves and with the general verdict, and plaintiff's motion for judgment in her favor on the special findings was properly denied.

Plaintiff requested the court to give the following instruction:

"You are instructed that although the ordinance gave preference to defendant's motor truck which was coming from the south, in the matter of right of way, if you find that defendant's motor truck was coming so rapidly that plaintiff, in the exercise of due diligence in that regard underestimated its speed and that she reasonably believed that she had abundant time to cross ahead of it until it was too late for her to do anything to avoid the collision, then you will find that such action on plaintiff's part did not constitute negligence."

The jury found plaintiff entered the intersection first and the ordinance relating to right of way became of no importance. So far as the instruction dealt with privilege of plaintiff to cross in front of an approaching vehicle, it could not apply to plaintiff unless she first obeyed the ordinance requiring her to stop, and she did not stop. The result is the motion for new trial was properly denied.

The judgment of the district court is affirmed.

---

### SPECIAL FINDINGS.

Q. 1. How many feet west of the west curb line of Thirteenth street was the front end of plaintiff's sedan when she saw defendant's truck approaching north at or south of the intersection of Thirteenth and Ann? A. Approximately two feet west.

Q. 2. From the instant plaintiff saw the defendant's truck approaching north at or south of the intersection of Thirteenth street and Ann avenue, to the instant of the collision, was there any period of time she did not or could not, had she looked, have a full view of the defendant's truck as it approached the point of the collision? A. No.

Q. 3. At the time plaintiff saw defendant's truck approaching north at or beyond the intersection of Thirteenth and Ann, at what rate of speed in miles per hour was the truck running? A. Twenty or twenty-five miles.

Q. 4. As plaintiff's sedan approached and entered the intersection of Armstrong and Thirteenth street, how many feet north of the south curb of Armstrong avenue was the right-hand side of plaintiff's motor car? A. Ten or twelve feet.

Q. 5. Did plaintiff's sedan come to a stop just before entering the intersection of Thirteenth street? A. No.

Q. 6. At the instant the front wheels of plaintiff's sedan entered the intersection of Thirteenth street, meaning crossing the west curb line of Thirteenth street if it were extended north, what rate of speed in miles per hour was her car going? A. Four or five miles per hour.

Q. 7. At what rate of speed, in miles per hour, was defendant's truck going north at the instant the front wheels of plaintiff's sedan entered the intersection of Thirteenth street? A. Twenty or twenty-five miles per hour.

Q. 8. Where, with reference to the rails of the street-car track, was defendant's truck when approaching north at the instant plaintiff's sedan entered the intersection of Thirteenth street? A. Astride the west rail of northbound track.

Q. 9. How many feet east of the west curb line of Thirteenth street were the front wheels of plaintiff's sedan immediately before the collision? A. About twenty-eight feet east.

Q. 10. (a) At what rate of speed, in miles per hour, did plaintiff enter the intersection of Thirteenth street? (b) How many feet did the front wheels of her car go into the intersection of Thirteenth street at the rate of speed called for in (a) of this question? A. (a) Four or five miles per hour. (b) Twenty-eight feet.

Q. 11. If you find that plaintiff increased her rate of speed in crossing the intersection, above that called for in the last question, then state: (a) To what rate of speed, in miles per hour, did she increase it? And (b) How many feet did she travel at the increased rate of speed before the collision? A. (a) We do not find she increased her speed.

Q. 12. (a) Where were the front wheels of plaintiff's sedan with reference to the west curb of Thirteenth street at the time the front wheels of defendant's truck entered the Armstrong street intersection, meaning thereby the south curb line of Armstrong street if it were extended west? (b) At what rate of speed, in miles per hour, was the truck going when it entered the intersection of Armstrong avenue? (c) Where were the front wheels of the truck with reference to the west rail of the northbound track at the time it entered the intersection of Armstrong avenue? A. (a) Nineteen or twenty feet. (b) About fifteen or twenty miles per hour. (c) Astride the west rail of northbound tracks.

Q. 13. At the instant of the collision, where were the front wheels of the defendant's truck with reference to the west rail of the northbound track? A. Still astride west rail of northbound track, but closer to west rail.

Q. 14. How many feet east and how many feet north of the junction of the curb line at the southwest corner of the intersection of Thirteenth and Armstrong did the collision of the truck and the sedan occur? A. About twenty-two feet seven inches east and about ten or twelve feet north.

Q. 15. (a) At what rate of speed in miles per hour was defendant's truck going at the instant of the collision? (b) At what rate of speed, in miles per hour, was plaintiff's sedan going at the instant of the collision? A. (a) Fifteen or twenty miles per hour. (b) Five or six miles.